Good morning, your honors, and may it please the court. Veterans Court erred in this case when it held Mr. Boza to a strict pleading requirement for secondary conditions not required by law. The Veterans Court's decision affirmed the VA's failure to fully develop Mr. Boza's case to its optimum. It's required by this Court's case law in the plain language of 38 CFR section 4.119, diagnostic code 7913, note 1. Mr. Boza is entitled to the same effective date for the complications of his service-connected diabetes, in this case the peripheral neuropathy of the left upper extremity and coronary artery disease, as he is for the diabetes. So hypothetically, let's assume he's got a primary condition of diabetes and 30 years later he develops coronary artery disease. So you're saying that when this arises 30 years after the initial award that he gets then 30 years worth of back compensation for this secondary condition? In this case, these conditions, the CAD and the peripheral neuropathy of the upper extremities did not arise 30 years later. Is there any evidence that that's the case? Yes, your honor. I believe that the October 2000 evidence that was submitted and that was discussed in the brief, which is found in the appendix, bear with me for just a second, found in the appendix at page 24 and 25, most specifically 25. As well, I would point out that while this case continued to pend and while Mr. Boza continued to seek his full entitlement, more evidence kept being submitted in the case of history as long as you're aware. As this was going, he kept submitting evidence that he had heart problems back in 2000, that he had tingling of his extremities back in 2000. This evidence found at page 25, he certainly has chest problems and he's got some hypertension. Number six there, he's saying that he has numbness in his hands. At that point, it's our contention and under this court's case law, most notably in Harris, the most recent case that was submitted as supplemental authority, that this was supposed to be construed broadly and the VA at that point in time needed to look at this and start going down the road of investigation as to what, under note one, they could start awarding him compensation for. He didn't need to make these claims. He has an underlying claim. It's for service connection for diabetes. Under the case law, the compensation... I'm a little unclear. I really am just unclear. I'm not going one way or another. On these three conditions that we're talking about here, he filed his claim in 2003 and he got the effective date for service connection in 2003. You're saying that when he filed the claim in 2003, there should have been an evidentiary question about when he started, the symptoms of that and therefore the award should have gone to when he first showed the symptoms of that rather than when he actually filed the claim? I'm saying that in 2003, what he filed was not a claim. I'm saying in 2003, what he was saying is he's clarifying what's going on with his pending diabetes claim that is ongoing. That's the mistake I think that got made here. I don't understand. What standard would you apply? You get a diabetes claim and it's granted and it goes to 2000. Then every decade or every five years or whatever... I'm not understanding what you're advocating, how we handle the secondary. In fact, I think what we're advocating is even simpler than what VA did here because he's got a pending claim for diabetes. What we're trying to do or what VA should be trying to do at this point is rate it properly, rate his condition. He's got this pending claim. It's going since 2000. He's got diabetes. He's got evidence of... But it's not pending anymore, right? He got an award. He had gotten an award, but before that decision became final, he kept piling evidence in here within the year and kept the claim going. I don't think there's any dispute that the claim kept going on. He didn't file maybe a technical notice of disagreement, but VA certainly treated this as an ongoing appeal. Under 38 CFR Section 3.156B, he kept piling evidence, new evidence in and new statements in, seeking the proper... compensation for his diabetes as well as the complications of his diabetes. It's like a wheel. How can you get compensation for complications if those complications haven't occurred yet? The complications would have to arise before he would be... I think under Ellington and that line of cases, McPhee, etc., if the complications truly arose at a later date, then that would be... In this case, that's not what's happening. If you go with the analogy of a wheel, he's got a wheel with the center of it is the diabetes. I'm trying to find the parameters of what you're advocating here. Are you saying as long as that initial claim is still open, any secondary things that arise until the date that that is ultimately decided, you get to put in and they get the same effective date? Is that what you're viewing? Not necessarily. If they truly arise at a later date, you can't... Does he show that each of these three conditions arose as of 2000? He has testified to that while the case was pending in the Board of Veterans' Appeals, both in the memoranda submitted by his counsel in later years, in the testimony he gave before the Board of Veterans' Appeals, as well as the fact that VA never really did undertake what it was supposed to do under Note 1 back in 2000. There was evidence in here, especially, most clearly, of the peripheral neuropathy of the upper extremities. Certainly, later on, he said that he had, as long as this is going on, if it can be shown that he had the CAD and he had the neuropathy going back to the date of the original claim, that's when they should do it. Is it your view that as long as the original claim is pending, but once the original claim is decided and he gets his award, then at least it concludes that you have to file another claim for secondary consideration? That's a separate thing, and again, I do think the court's case law is relatively clear on that with Ellington and that line of cases. That is that line of cases. Okay, so you want a rule. You recognize that once you get your claim for the primary cause and that's closed and you get your effective date, that anything that arises or that you record and put forth evidence for after that comes under a separate claim. If you truly, yes, if you truly file a separate claim, but what Mr. Bowman here did, like I said, getting back to the rule. I just want to know, I mean, what I'm looking for, so I want you to be able to explain it. I'm looking for what rule you're advocating here, and one of the subparts of that is does that rule apply if the primary claim is still open or even after that primary claim is decided and he gets his award and we have the effective date of it and so forth? If the claim closed and he comes back and truly files a separate claim for a condition that he's claiming as secondary, that's 3.310. But what if he claims, and yeah, and this arose back in 2000. I'm just filing my claim now, but it actually arose back in 2000, and so I should get that date. I think that's going to depend on the actual situation, but I think that if it's truly, like I say, if it's truly a new claim, even if it did arise before and he's got nothing to go hang his hat on that's been pending as the true underlying claim and it's a closed situation, it's five years later. Okay, so we're dealing with pending underlying claims. So is it your view that at any stage the proceeding, I mean, these cases unfortunately go on for a very long time. Well aware. So he can come in four years down the road when the case is before the board and put in new evidence when it's before the veteran's claim. I mean, the problem is at what level do you shut down the evidence that you can come forward with? I think it's pretty, I'm not, I wouldn't worry too much about that because as a practical matter, let's say it is four years down the road, and your Honor rightly points out these things take a very long time, but if he's truly perfecting his appeal rights, what he's seeking and what this court has always said, well not always, but has for the past decade or so said, is that what the veteran is seeking is the highest compensation available. So yes, VA, if there's a pending claim for the underlying diabetes is ongoing, and then he gives evidence, good evidence, that he suffered peripheral neuropathy back when he filed the original claim, and the claim is still ongoing, it's not a claim at that point. He is just putting in evidence of what his complications are. Well if he's seen three other conditions, did he claim they dated back to 2000? Because that was the date of the original diabetes claim. He did. He did that once. So is it your view, the rule you're proposing here is if he can demonstrate that he had these secondary considerations as of the time he filed the initial claim, and if the initial claim is still open, that he ought to be able to get that as part. Is that the rule you're advocating? I'm just trying to understand what the rule is that you're advocating. Yes, but I think what is key to understanding what my position is, is that there is an ongoing claim. The claim is rating his diabetes appropriately. Yeah, but you would limit it at least if he could not demonstrate the coronary artery disease dated back to when his date of his original claim is, which is 2000. If he doesn't have it, it can't be rated. And we look back at the date he filed the initial claim as to whether or not he has demonstrated. Because I thought the heart disease, for instance, my notes indicate, was diagnosed in April of 2003, and the date of the claim was July of 2000. So how does that drive this rule? Again, that's really getting into a lot of the financial determinations. At the end of the day, the Veterans Court committed legal error here because it completely violated what this court said it should do in here. It didn't even give consideration, or if it did, I'm missing it. It didn't even give consideration to Zemre, Roberson, that line of cases, which is what I'm advocating, that you're seeking the highest compensation. Getting bogged down in a claim and all of these things is what VA did to really muddy this up. These aren't separate claims. If he truly was not diagnosed with CAD until 2003, and that really is what ends up happening, then that's fine. The effective date is going to be when the diagnosis comes in. What's the difference to him if you say that you have to file a new claim? If you file a new claim, you're going to get it baptized to that time. I don't understand. If he wasn't diagnosed until 2003, he's not going to get the 2000 date in any event. He's going to get the date he was diagnosed and then file this claim. You're talking about the CAD. I disagree with the fact that that's when he got diagnosed with it, but VA didn't go through with what it's supposed to do when it's rating diabetes claims and truly find the onset and when they could rate that CAD. I don't understand what that means. When you file a claim for diabetes, the VA has to do what with respect to other conditions that might arise in the future? It's not that it arose in the future. Putting aside the CAD for just a second and focusing on the left upper extremity neuropathy, there is evidence in the record in 2000 at the time of the original claim that he is having this tingling in his fingers. There's also evidence, while it's not a clear diagnosis, there's also evidence that he has heart problems, that he has chest problems. Why isn't that part of the original diagnosis of his diabetes? It seems to me that tingling sensation in an arm or a leg is a symptom of diabetes too. That was the original diagnosis. That is a great point, Your Honor, and the way to rate that, the way to rate this manifestation of the underlying diabetes, is to rate him for what the neuropathy is causing him. That's the way a diagnostic code is set up. That's how to truly rate his diabetes. Aren't you arguing that if you have a disease, or even once you're determined, you're diagnosed with diabetes, and you're given some sort of a rating because of it, some complication in your eye or something, that because there's a number of symptoms or potential complications that can flow out of that, that all of those complications should relate back to that original diagnosis. That's your argument. You did receive benefits for the secondary complications. The problem you're having is that they're not relating back to the original diagnosis. How can VA do that? How can it award disability for complications that did not exist during that time period? If they didn't exist, VA does not have to. The problem here is there has been no true broad reading, and that's the legal error under what this Court recently articulated. You want us to review the record and review the facts and determine that the citations you've given us is a complication of diabetes, and you're asking us to almost be doctors here. I'm really not, Your Honor. I'm really not asking that. In fact, I don't think that this Court can. Under its jurisdiction, I'm agreeing with you. What I think this Court can do is do exactly what it did in Harris. Tell the Veterans Court that it needs to consider these claims broadly, as commanded in Zemre, Roberson, Moody, and that line of cases. The Court simply didn't do that here, and so it's not up to you to get into this record and figure out what he had and when he had it. Those are factual findings, and they need to be done below, but they need to be done under the proper legal standard, and that proper legal standard is to read these things sympathetically, pro-veterans, and broadly. That's what the Veterans Court didn't do, and I'm just here to discuss the Veterans Court's error because that's all I can do. The Veterans Court didn't do that. It didn't follow what the Court told it to do in Harris. It didn't follow Zemre. It didn't follow Roberson, and it did not look at this broadly. All it did was cite to an old case, KL, for the simple proposition that medical evidence in and of itself doesn't necessarily raise a new claim. But again, that's not what we have here. Thank you. May it please the Court. First, getting to this whole Roberson, Moody, Zemre point, that really is the heart of this case. Whether or not the VA sympathetically read Mr. Bogue's original claim in 2000 to incorporate all potential claims that might be out there. Technically, under the VA's rules and regulations, Mr. Bogue's claim in 2000 was solely for diabetes. It was not for any complications. If you look at the record at page 823, he cited diabetes only as a result of Agent Orange. He didn't list coronary artery disease. He didn't list peripheral neuropathy of the upper or lower extremities. He didn't list nephropathy. He didn't list anything else. That would come to the medical exam, wouldn't it? He's not required to diagnose himself. He is not, but that's my next point. The record contains one exam he had at the VA hospital in Phoenix. There it was shown that he had had some numbness in his fingers, but they thought they followed that as carpal tunnel syndrome. He had had two incidents of chest pain. However, when he had his C&P exam in February 2001, there was no evidence of numbness. There was a tremor in the right hand, which is not even the subject of this appeal. Mr. Bogue is talking about neuropathy of the left hand. The heart was examined and found to be normal, and he reported that he had no known heart condition at that time. He was not rated for peripheral neuropathy of the upper extremities or for coronary artery disease. However, he had not made a claim for peripheral neuropathy of the lower extremities. However, the medical examination showed that he was having significant problems with his feet. He was having trouble walking. His gait was off. He was unable to play sports anymore. Notwithstanding the fact that his claim was only for diabetes, he was rated for peripheral neuropathy of the lower extremities. His claim for diabetes also included a peripheral vascular disease. These were things that were diagnosed in 2000 at the time of the original claim. At that time, there was no finding that he had suffered peripheral neuropathy of the hands or that he suffered coronary artery disease. That's why his effective date is now back to 2000. In 2003, Mr. Bogue followed up, and this is page 839 of the record. It says, my neuropathy has worsened. It now affects my hands. At that point, Mr. Boza was having trouble with his hands. At that point, he was evaluated again. It was found that the peripheral neuropathy did affect his hands, and he was rated for it at that time. That doesn't mean that he had peripheral neuropathy in 2000. I would also note that Mr. Bogue's counsel says that the Veterans Court never mentioned Harris or any of these cases. Therefore, that means that there wasn't a sympathetic reading. First, I've just shown you that there was a sympathetic reading. Second, the Board of Veterans' Appeals, pages supplemental appendix 815 and 816, looked at these three disabilities, nephropathy, neuropathy, and coronary artery disease, and found specifically that there was not evidence that he had been diagnosed or had those in 2000. What would happen if, on the original diagnosis of diabetes, had Mr. Boza just made these claims like, my feet are going to stop at some point, I'm going to lose my eyesight, I may have an amputation, and all of those are part of the record. Then that would be a claim. It would be a claim. Yes. Even though all of those are secondary complications. That would have been a claim. And then later on, when his foot is amputated, it would relate back to... Oh, no, I'm sorry. I thought you were saying that his foot... If he had made those claims in 2000, and the medical examination and the rating office had determined that there were rateable disabilities, he could potentially have gotten... I'm not sure, but hypothetically, if he just reads up on diabetes and knows, given his symptoms now, this is very likely to occur somewhere down the road. You're not suggesting... I'm not suggesting that. You cannot have an effective date... Technically, it's the later of the times the disability manifested or the time of the claim. If you make a claim in 2003 for a disability that manifested in 2001, technically, you don't get the earlier effective date. In this case, applying a broad reading of Roberson, because he did make a claim of diabetes in 2000, and it is VA's practice to look for complications when it does the medical examination for diabetes. If the neuropathy of his hands or the coronary artery disease had been diagnosed and were manifest at that time, then he likely would have been rated for it, just like he was for the neuropathy of his feet, because he complained that he was having trouble walking, and the doctors recognized that that was a complication of diabetes, and he was entitled to a rating for it at that time and for compensation. But as Judge Probst pointed out earlier, regardless of Roberson or the regulations, a later diagnosis of secondary conditions related to diabetes cannot automatically relate back to the date of the original claim. It doesn't matter whether it's a new claim, whether it's an open claim. Here, the claim has remained continuously open. What if you can show, if you come in a few years later, and you can show that he was misdiagnosed in the original claim in 2000, that indeed he was manifesting, and he did have symptoms, and he did have these problems at the time of the original claim? That would be a different situation. But here, the Board of Veterans' Appeals specifically looked at the record to determine whether or not an earlier effective date was warranted under the evidence and found it did not. That's application of law to fact. That's not something that this Court can really overturn. And as I mentioned before, it's obvious from the record that the Veterans' Administration did not ignore complications when he originally came in in 2000 because they did raise him for a complication that he had not listed on his application form. If medical literature indicates that a particular disease, in this case diabetes, that the probability of developing these secondary complications are high, or that it just simply says these are complications that are going to derive from diabetes, I kind of see a little bit of Mr. Boza's argument in that he's saying, okay, if the literature says that, then five years later my foot is amputated, and we knew of that potential back when my diabetes was diagnosed. Why does that not relate back to the original diagnosis? We don't know what Mr. Boza's problem was at the time of the original diagnosis. If he had symptoms, that doesn't necessarily mean that he meets the diagnostic criteria under the diagnostic code for labeling it as actual disability. Clearly when he had his foot amputated, that's a problem. You're saying the award of disability is based on the disability he is experiencing at the time that it manifests. Exactly. Numbness of fingers does not equal peripheral neuropathy. Peripheral neuropathy is based on Code 8515, and it's sort of a hybrid, but it's actually a paralysis thing. You have to have trouble with moving your hands. Now at the time he was examined in 2000, there was not a finding that he had peripheral neuropathy of his hands. However, there was a finding of peripheral neuropathy of his feet. So there's nothing in the record to indicate that any error was committed at that time. Mr. Boza is simply contending that because he was eventually diagnosed with these disabilities and awarded service connection and provided compensation, that all of them should relate back to 2000. Mr. Boza's counsel didn't say much about the neuropathy, but that's a renal issue, and he hasn't even argued that there was any mention of that in 2000. He has emphasized that these things came up in the course of an open claim. That's correct, but... You're saying that that doesn't matter. That doesn't matter. That's still a separate claim. Right. If you have a secondary service connection, the Ellington case is clear about that. It doesn't distinguish between new claims and old claims. It just says if you have a secondary service condition under 3.110, it is part of the original condition, but that doesn't mean you get the effective date for diagnosis of the original condition. It would be ridiculous if Mr. Boza had no sign of hypertension until 2010 to say, well, now you get compensation back to 2000 just because you made your original claim for diabetes. I would also mention that Mr. Boza's counsel made reference to the fact that there was a hypertension diagnosis in 2000. That hypertension is not the same as coronary artery disease. In fact, Mr. Boza has never been service-connected for the hypertension. It's been found not to be related to the diabetes. So that was not evidence that he clearly had coronary artery disease. Also, he had bypass surgery in 2003, which is a clear diagnosis that he had coronary artery disease. Unless the court has other questions, I would ask that you affirm. If I could clear really quickly something up just to – the nephropathy is not on appeal here today. The plea is lower for the two claims, the CAD and the peripheral nephropathy of the left upper extremity. Counsel, let me ask you a quick question because I don't want this to end without hearing from you about this. The Diagnostic Code in 7913 has a Note 1, and it says, evaluate compensable complications of diabetes separately unless – to evaluate them separately unless they are part of the criteria used to support a 100% evaluation. So were the secondary complications with Mr. Boza, were they part of the criteria or had they been part of the criteria that's been used to support a 100% evaluation? The reason for that note is because if he were to be awarded 100%, then there would be a pyramiding problem. That's the reason for that note. He was never awarded 100% for diabetes. He's been awarded 100% for the CAD, I believe, but not for the diabetes. So that's the case, right? I mean, the reason you have separate awards for secondary complications is to avoid that pyramiding effect. It's to avoid the pyramiding, but there's no pyramiding here because he only got the 20% for the diabetes. So what they were supposed to do under that note was take a look at the other complications that he had and rate those separately, which – I think Judge Rand is asking about – but leaving aside the circumstances of this case, because he got a low rating, there could be circumstances under the rule you're advocating where that would come into play. If he got 100%, there could be a pyramiding problem, but that's so far afield of what we're talking about today because there is no 100% rating. There's not a pyramiding issue here, so I don't think that that really illuminates this discussion very much because if there was 100%, that would be a different thing. One final thought? I have one final thought, and that is that VA really asked – and that's the legal error here – is they asked him to specifically plead complications. He was under no such legal obligation. The Veterans Court legally erred here when it did not liberally construe the evidence of record while they had the chance to liberally construe it. Thank you, Your Honor. Thank you. The case is submitted.